# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| BIOMET 3i, LLC, and ZIMMER US, INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CAUSE NO.: 1:16-CV-125-TLS |
| ) | |
| HEATHER LAND, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

This matter is before the Court on a Verified Motion for Temporary Restraining Order [ECF No. 33], filed by Plaintiffs Biomet 3i, LLC and Zimmer US, Inc. (collectively "Zimmer Biomet") on June 8, 2016.

On April 12, 2016, Zimmer Biomet commenced this case by filing its Complaint for Preliminary Injunction, Permanent Injunction, and Damages [ECF No. 1], which was filed contemporaneously with Zimmer Biomet's Motion for Preliminary Injunction [ECF No. 8]. On May 3, 2016, the Defendant, Heather Land, responded by filing her Combined Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) or, in the Alternative, to Dismiss Pursuant to F.R.C.P. 12(b)(6) and 12(d) [ECF No. 19]. On May 9, 2016, the Court held a telephonic conference with the parties, during which the Court granted Zimmer Biomet's Motion for Expedited Discovery, Preservation of Evidence, and Evidentiary Hearing on Motion for Preliminary Injunction [ECF No. 10] and set briefing deadlines. On May 10, 2016, the Court referred the pending motions to Magistrate Judge Susan L. Collins. An evidentiary before Judge Collins is set to begin on July 11, 2016.

Despite Zimmer Biomet not initially requesting a temporary restraining order (TRO), on June 8, 2016, it moved for such relief after confirming "through discovery that Keystone [Dental, LLC] has instructed Land to ignore the [Confidentiality, Non-Competition, and Non-Solicitation Agreement for Sales Managers and Representatives] and, consistent with that instruction, Land has engaged in multiple breaches of [that a]greement." (V. Mot. TRO 1, ECF No. 33.) Zimmer Biomet's requested TRO would immediately enjoin and restrain Land from certain activities through the July 11, 2016, preliminary injunction hearing. On June 17, 2016, the Defendant filed her Response [ECF No. 42]. The Court held a telephonic conference on June 21, 2016, to address the TRO, and at that time, the parties stated that they were satisfied with the current record, but each side elected to present oral argument. Having taken this matter under advisement, the Court now denies Zimmer Biomet's request for a TRO.

**FACTUAL BACKGROUND**

Zimmer Biomet is in the "business of the development, manufacture, marketing, distribution, and sale of orthopedic reconstructive, trauma, extremity, biologic, dental, and surgical devices, implants, instruments, and other related and complementary products, processes, and services throughout the United States and in foreign countries." (Burke Aff. 1, ECF No. 9-1.) In April 2011, Biomet 3i, LLC hired Land as a Territory Sales Manager, a position she held until October 2011, when she was promoted to Regional Sales Manager. As a Regional Sales Manager, Land's territory covered Arizona, California, and Hawaii. After the merger of Zimmer US, Inc., and Biomet, Inc., which occurred in June 2015, Land applied for the position of Corporate Sales Specialty Manager at Zimmer Biomet. Around November 15, 2015, Land was promoted to that position, and in this role "she would promote, market, sell, and

service Zimmer Biomet products in Alaska, Arizona, California, Colorado, Hawaii, Idaho, Minnesota, Montana, Nevada, North Dakota, Oregon, South Dakota, Utah, Washington, Wisconsin, and Wyoming." (*Id.* at 5.) Although Land signed a confidentiality and noncompetition agreement in 2008, upon assuming her new role in November 2015, Land agreed to the Confidentiality, Non-Competition and Non-Solicitation Agreement for Sales Managers and Representatives (the "Agreement").

On February 23, 2016, Land notified Jim Gerson, her Team Lead at Zimmer Biomet that she intended to accept a position as Regional Sales Manager, Western Region, at Keystone Dental, LLC ("Keystone Dental"). Although Gerson served as Team Lead, both Gerson and Land reported directly to Adam Larkin, who is Zimmer Biomet's Director of Sales Operations, Specialty Markets and Training. Land also informed Larkin of her resignation, which was confirmed by an e-mail dated February 24, 2016. Land continued to work at Zimmer Biomet until March 2, 2016. On March 24, 2016, Zimmer Biomet sent Land a cease and desist letter regarding her new position at Keystone Dental.

**LEGAL STANDARD**

Unless a temporary restraining order is issued ex parte, the movant must make the same showing that is contemplated for a preliminary injunction. *Levas v. Vill. of Antioch, Ill.*, 684 F.2d 446, 448 (7th Cir. 1982); *YourNetDating, Inc. v. Mitchell*, 88 F. Supp. 2d 870, 871 (N.D. Ill. 2000) ("The standards . . . appl[ied] when determining whether a TRO is appropriate are analogous to the standards applicable when determining whether preliminary injunctive relief is appropriate."). However, a temporary restraining order is intended to preserve the status quo for a brief period until a hearing can be held on the request for a preliminary injunction. *Smith v.*

3

*Wilson*, Cause No. 3:07-cv-338-TS, 2007 WL 4324005, at *1 (N.D. Ind. Dec. 7, 2007). With this scope in mind, injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "[T]he moving party must demonstrate a reasonable likelihood of success on the merits, no adequate remedy at law, and irreparable harm absent the injunction." *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

Once the district court determines these threshold requirements are met, it must consider the irreparable harm the plaintiff or defendant would suffer if the injunctive relief is denied or granted, respectively. *Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 678 (7th Cir. 2012). The district court must also consider the public interest in granting or denying an injunction. *Id.* Balancing of harms is carried out by weighing each factor "against one another 'in a sliding scale analysis,'" *id.* (quoting *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006)), which is a "subjective and intuitive" approach that "permits district courts to weigh the competing considerations and mold appropriate relief," *id.* (quoting *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895–96 (7th Cir. 2001)) (internal quotation marks omitted). When it is more likely that the moving party will succeed on the merits, the balance of harms may weigh less in its favor. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S., Inc.*, 549 F.3d 1079, 1100 (7th Cir. 2008).

## DISCUSSION

According to Zimmer Biomet, discovery has revealed that Land has committed several breaches of the Agreement, including: (1) instructing her sales team at Keystone Dental to

4

exploit a "confidential . . . distributorship concern in order to convert business" (V. Mot. TRO 2); (2) directing her Keystone Dental sales team, by using her knowledge of specific personnel and product challenges at Zimmer Biomet, to target Zimmer Biomet's customers; (3) directly communicating with a Zimmer Biomet customer in an attempt to convert his business to Keystone Dental; (4) offering and providing a Zimmer Biomet "tool" to her colleagues at Keystone Dental (*id.*); and (5) taking instruction from Keystone Dental to ignore the Agreement. In support of these allegations, Zimmer Biomet has presented six short e-mail chains and a blank one-page form.

Based on this evidence, Zimmer Biomet asks this Court to immediately enjoin and restrain Land from: (1) "[c]ontinuing to work [for] Keystone Dental . . . in the Restricted Territory[1] she covered as Zimmer Biomet . . . sales manager," (V. Mot. TRO 1); (2) "[d]irectly or indirectly soliciting (including managing the Restricted Territory for Keystone [Dental] or otherwise being involved in Keystone[] Dental's efforts to solicit) any person, corporation, or other entity serviced, sold to, approached, or solicited, directly or indirectly, by Land during the last eighteen months of her employment with Zimmer Biomet," (*id.*); and (3) "[d]isclosing or using any Confidential Information, as defined in [the Agreement],"[2] (*id.*).

---

[1] According to Zimmer Biomet's Verified Motion, the "Restricted Territory" means Alaska, Arizona, California, Colorado, Hawaii, Idaho, Minnesota, Montana, Nevada, North Dakota, Oregon, South Dakota, Utah, Washington, Wisconsin, and Wyoming. This appears to be an application of that term, as defined in the Agreement. (Agreement ¶ 7.(a)(4), at 5, ECF No. 1-1 ("'Restricted Territory' is defined as (i) any Customer-specific or geographic territory assigned to, or covered by, Employee during Employee's last two (2) years of employment with Company; (ii) any state or portion of any state assigned to Employee by Company for purposes of any sales or service activities or responsibilities at any time during the two (2) years preceding the termination of Employee's employment with Company; or (iii) any county, municipality or parish of any state or commonwealth assigned to Employee or in which Employee engaged in any sales or service activities on behalf of Company at any time during the two (2) years preceding termination of Employee's employment with Company.").)

[2] "'Confidential Information' includes, but is not limited to, any and all of Company's trade secrets, confidential and proprietary information and all other information and data of Company that is not generally known to the public or other third parties who could derive economic value from its use of disclosure.

5

Under Indiana law,[3] noncompetition agreements are in restraint of trade and are disfavored. *Gleeson v. Preferred Sourcing, LLC*, 883 N.E.2d 164, 172 (Ind. Ct. App. 2008). Further, these agreements "are strictly construed against the employer and are enforced only if reasonable" in terms of respecting the employer's legitimate interests, the employee's restrictions, and the public interest. *Id.* Once it is determined that "the employer has asserted a legitimate, protectible interest," *id.*, the employer must show that the agreement's scope "is reasonable in scope as to the time, activity, and geographic area restricted," *Cent. Ind. Podiatry, P.C. v. Krueger*, 882 N.E.2d 723, 729 (Ind. 2008).

Zimmer Biomet asserts that it has legitimate, protectable interests in "its customer goodwill (including relationships with its customers), confidential information, and ensuring its former employee does not use that information to benefit a competitor." (Br. Supp. Mot. TRO 9, ECF No. 34.) Indiana law recognizes "good will" as a protectable interest, which includes "secret or confidential information such as the names and addresses of customers and the advantage acquired through representative contact." *Gleeson*, 883 N.E.2d at 173. Nevertheless, "[a] confidentiality agreement 'cannot make secret that which is not secret.'" *Bodemer v. Swanel*

---

Confidential information includes, without limitation, technical information such as product specifications, compounds, formulas, improvements, discoveries, developments, designs, inventions, techniques, new products and surgical training methods, and research and development information; confidential business methods and processes; business plans and strategies; marketing plans and strategies; non-public financial information including budgets, sales data, sales forecasts, sales quotas, and information regarding profits and losses; office optimization and logistics information; information pertaining to current and prospective customers; information pertaining to distributors and sales structures; pricing information; discount schedules; costing information; personnel information; compensation structure, schedules and plans; and information about current and prospective products or services, whether or not reduced to writing or other tangible medium of expression, including work product created by Employee in rendering services for Company." (Agreement ¶ 2.(a), at 1.)

[3] For purposes of resolving Zimmer Biomet's request for a TRO, the Court assumes, without deciding, that Indiana law applies.

*Beverage, Inc.*, 884 F. Supp. 2d 717, 734–35 (N.D. Ind. 2012) (quoting *Lanier Prof'l Servs., Inc. v. Ricci*, 192 F.3d 1, 5 (1st Cir. 1999)).

Even assuming, without deciding, that the Agreement between Zimmer Biomet and Land is enforceable and permits injunctive relief in Zimmer Biomet's favor, at this time the evidence presented in support of the TRO is insufficient to establish that Zimmer Biomet will suffer immediate and irreparable harm before the preliminary injunction hearing set for July 11, 2016. First, Zimmer Biomet points to several short e-mails and asserts that these communications show Land using her confidential knowledge to convert Zimmer Biomet's business. In an email dated March 15, 2016, Land discusses problems associated with a Zimmer Biomet vendor named Miami Tissue Bank. Although this information may have been confidential at one point, the affidavit of Christopher Johnson, a Regional Manager for Keystone Dental, demonstrates that Keystone Dental had independent knowledge of this issue. Similarly, the e-mail dated March 18, 2016, references information contained in recall notices published by the Food and Drug Administration.[4] To the extent that this e-mail, along with the e-mail communications with Dr. Polyakov that span from March 24–25, 2016, represent actions that violate the Agreement, Zimmer Biomet has not shown any evidence that it lost a single sale or customer in any of the sixteen states in which Land is allegedly prohibited from engaging customers. *Cf. Zimmer, Inc. v. Davis*, 922 N.E.2d 68, 74–75 (Ind. Ct. App. 2010) (affirming the trial district's denial of a preliminary injunction based upon the balancing of the harms because "there was no evidence that Zimmer had lost any sales, lost any customers for its products, or lost any consulting surgeons as a result of [the defendant's] employment with Biomet").

---

[4] Given these circumstances, it would appear that even the Agreement itself no longer sought to control this type of information. (Agreement ¶ 2.(b), at 2 ("Employee's non-disclosure obligations shall continue as long as the Confidential Information remains confidential and shall not apply to information that becomes generally known to the public through no fault or action of Employee.").)

7

Second, Land's e-mails discussing forms and forwarding the "Biomet tool" to colleagues at Keystone Dental fail to establish imminent and irreparable harm to Zimmer Biomet. Although the "tool" bears Biomet 3i's letterhead, it is a blank form that does not appear to reveal any information that could harm Zimmer Biomet's business. Zimmer Biomet has not cited any authority that identifies blank business forms as confidential information that may be protected by a TRO, and it is unlikely any exists. *See Bodemer*, 884 F. Supp. 2d at 735 (noting at summary judgment that the company "could not possibly argue" that every piece of information regarding its business is confidential).

Third, Zimmer Biomet characterizes a February 15, 2016, e-mail from Keystone Dental to Land as an instruction "to ignore her obligations to Zimmer Biomet." (Br. Supp. Mot. TRO 6.) The exact statement, "our lawyer says that as long as you were living in California when you signed the . . . Agreement, it will not hold up in court. California is a right to work state. So, they will make noises, but you have the right to work for whomever you wish" (Br. Supp. Mot. TRO Ex. 6, at 1, ECF No. 34-6), may displease Zimmer Biomet. However, it is a stretch to say that this legal opinion about the applicability of California law and its affect upon Land amounts to an instruction to ignore the Agreement. And even if the e-mail did constitute an instruction to ignore the Agreement, the record contains no evidence that Land has ignored the Agreement in a way that caused harm to Zimmer Biomet.

Although counsel for Zimmer Biomet referenced a flash drive that is reportedly in Land's possession, the flash drive was not referenced in Zimmer Biomet's TRO filings, none of its contents are filed into the record, and it has not been shown that Land has used any of the information stored on it.

## CONCLUSION

For these reasons, the Plaintiffs' Verified Motion for TRO [ECF No. 33.] is DENIED. The evidentiary hearing on the Plaintiffs' Motion for Preliminary Injunction is CONFIRMED for July 11, 2016.

SO ORDERED on June 29, 2016.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
