# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | |
|---|---|
| BIOMET 3i, LLC, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )      No. 1:16-cv-00125-TLS-SLC |
| | ) |
| HEATHER LAND, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Before the Court is Defendant Heather Land's motion to transfer venue pursuant to 28 U.S.C. § 1404(a) or, in the alternative, to dismiss pursuant to Rule 12(b)(6) and Rule 12(d) of the Federal Rules of Civil Procedure. (DE 19). In her motion, Land requests that the Court transfer this action to the United States District Court for the Southern District of California, because, Land asserts, it bears a significantly stronger connection to the litigation, as she contends that California law will govern the claims in the case and that California is the epicenter of the facts surrounding the litigation. (DE 19 ¶ 1). Alternatively, Land requests that Counts I, II, and III be dismissed under Rule 12(b)(6) for failure to state a claim and for other reasons, and further requests that Count I be dismissed pursuant to Rule 12(d) on the basis that Plaintiffs Biomet 3i, LLC, and Zimmer US, Inc. (together, "Zimmer Biomet"), are estopped on this claim. (DE 19 ¶¶ 3, 4). Land has filed a memorandum and a declaration in support of her motion. (DE 20). Zimmer Biomet has filed a response in opposition, along with supporting affidavits and other exhibits. (DE 26). Land has filed a reply brief in support of her motion. (DE 27). This matter was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (DE 25). For the following reasons, I will RECOMMEND that Land's motion to

transfer and dismiss be DENIED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Biomet 3i, LLC, is a Florida-based limited liability company with its principal place of business in Palm Beach Gardens, Florida; Biomet 3i, LLC, is also registered to do business in the state of Indiana. (DE 1 ¶ 1). The sole member of Biomet 3i, LLC, is Implant Innovations Holdings, LLC, which is an Indiana company and has its principal place of business in Indiana. (DE 1 ¶ 6). The sole member of Implant Innovations Holdings, LLC, is Biomet, Inc., which is incorporated in Indiana and has its principal place of business in Indiana. (DE 1 ¶ 6).

Zimmer US, Inc., is a Delaware corporation with its principal place of business in Warsaw, Indiana. (DE 1 ¶ 2). In June 2015, Biomet, Inc., and its affiliate companies, including Biomet 3i, LLC, merged with Zimmer Holdings, Inc., and its affiliate companies, including Zimmer US, Inc.; the combined entity conducts business world-wide using the "Zimmer Biomet" brand name. (DE 1 ¶ 3). Zimmer Biomet develops, manufactures, and sells orthopedic reconstructive, trauma, biologic, dental, and surgical devices, implants, instruments, systems, and other related and complementary products, processes, and services. (DE 1 ¶ 15).

Land began working for Plaintiff Biomet 3i, LLC, as a territory sales manager on April 28, 2008. (DE 1 ¶ 27). As a condition of her employment with Biomet 3i, LLC, Land agreed to and executed a Confidentiality and Non-Competition Agreement (the "2008 Agreement"), which contained certain non-competition, non-solicitation, and confidentiality covenants, and which included a Florida choice-of-law and venue clause. (DE 1 ¶ 28; DE 1-2 ¶ 7). Land was promoted to regional sales manager on November 14, 2011. (DE 1 ¶ 29). As a regional sales manager, Land oversaw and managed sales activities in a territory including parts of Arizona and

California.  (DE 1 ¶¶ 29, 30).

After Zimmer Biomet's merger in June 2015, Land applied for a corporate sales specialty manager position; she began working as the corporate sales speciality manager on November 15, 2015.  (DE 1 ¶¶ 31, 34).  As a condition of her employment for the corporate sales specialty manager position, Land agreed to and executed a Confidentiality, Non-Competition and Non-Solicitation Agreement for Sales Managers and Representatives (the "2015 Agreement") on November 12, 2015.  (DE 1 ¶¶ 13, 39, 40).  At the time Land signed the 2015 Agreement on November 12, 2015, she was located in California.  (DE 20-1 ¶ 3).  Land signed the 2015 Agreement because she was told to do so as part of her acceptance of the position of corporate sales specialty manager.  (DE 20-1 ¶ 6).  When she signed the 2015 Agreement, Land "understood that non-competition agreements in California were not enforceable."  (DE 20-1 ¶ 7).

Under the 2015 Agreement, Land agreed that:  (1) for a period of 18 months after termination of her employment with Zimmer Biomet, she would not compete by working for a competitor in the same geographic territory she covered at any time during her last two years of employment (DE 1-1 ¶ 7(b)(1)); (2) for a period of 18 months after termination of her employment with Zimmer Biomet, she would not directly or indirectly solicit Zimmer Biomet's customers or prospects with whom she worked or for whom she held supervisory or managerial responsibilities during the last two years of her employment (DE 1-1 ¶ 7(b)(2)); (3) she would not disclose confidential information that she was exposed to through her work at Zimmer Biomet (DE 1-1 ¶ 2); and (4) Indiana law would apply to any dispute arising out of the 2015 Agreement (DE 1-1 ¶ 13).

As corporate sales speciality manager, Land "worked out of California," where she also resided. (DE 20-1 ¶ 8). In this role, Land was responsible for a geographic region that included Alaska, Arizona, California, Hawaii, Idaho, Minnesota, Montana, Nevada, North Dakota, Oregon, South Dakota, Utah, Washington, Wisconsin, and Wyoming. (DE 1 ¶ 36). Land has never visited Indiana for business purposes. (DE 20-1 ¶ 5). Land's job as corporate sales specialty manager involved her working with regional sales managers; the regional sales managers oversaw the work of the field sales representatives, who in turn made direct sales to customers. (DE 20-1 ¶ 9). As corporate sales specialty manager for Zimmer Biomet, Land handled three categories of Zimmer Biomet customers, specifically military, university, and dental service organizations. (DE 20-1 ¶ 10).

On February 23, 2016, Land notified Jim Gerson, Land's team lead at Zimmer Biomet, that she intended to accept a regional sales manager position for the western region with Keystone Dental. (DE 20-1 ¶ 13). Land also spoke to Adam Larkin, Zimmer Biomet's Director of Sales Operations, Specialty Markets, and Training; Brett Deaver, Zimmer Biomet's Vice President of Global Marketing and Education; and Brian Burke, Zimmer Biomet's General Manager for North America regarding the position she was taking at Keystone Dental. (DE 20-1 ¶¶ 14-18). Land characterizes these conversations with Zimmer Biomet's employees as them telling her that the position at Keystone Dental would be a "good opportunity," "good deal," and "good choice" for her. (DE 20-1 ¶¶ 14, 17, 18). Land continued to work for Zimmer Biomet through March 2, 2016, during which time Land was never informed that Zimmer Biomet had any objection to her taking the position at Keystone Dental, and during which time Land's activities and access to information remained unrestricted to her knowledge. (DE 20-1 ¶ 19). On

March 2, 2016, Land participated in an exit interview with Sandi Thompson, a member of Zimmer Biomet's human resources department.  (DE 20-1 ¶ 20).  Land states that Ms. Thompson wished her well in her new position at Keystone Dental.  (DE 20-1 ¶ 20).

Land thereafter began working for Keystone Dental, a company that develops, manufactures, markets, and sells dental implant products and systems that directly compete with Zimmer Biomet.  (DE 1 ¶¶ 51-53).  In her work for Keystone Dental, Land manages a geographic region that "mirrors or overlaps" the area she managed for Zimmer Biomet.  (DE 1 ¶ 55).  On March 24, 2016, Zimmer Biomet sent Land a letter notifying her that it believed she was violating the 2015 Agreement.  (DE 1-3; 20-1 ¶ 21).  Land states that this was the first time she learned that Zimmer Biomet objected to her job at Keystone Dental.  (DE 20-1 ¶ 21).

Counsel for Land and Keystone Dental responded to Zimmer Biomet with a letter dated April 4, 2016.  (DE 1-4).  In this letter, Land's counsel stated that Land and Keystone Dental were "surprised" to receive Zimmer Biomet's letter, because "non-competition and customer non-solicitation covenants are unquestionably unenforceable against California workers."  (DE 1-4 at 1).  Land's counsel further contended in the letter that Indiana's conflict of laws provision would require a finding that California law would apply given California's greater interest in the outcome, because the 2015 Agreement was executed in California, Land lived in California and performed her services for Zimmer Biomet in California, and Zimmer Biomet maintained a presence in California.  (DE 1-4 at 1-2).  Land's counsel also claimed that Land's signature of the 2015 Agreement was "obtained under duress" and thus was unenforceable, since Land was not previously subjected to restrictive covenants during her employment with Biomet and since Land was informed there would be a negative impact on her salary if she did not sign the 2015

Agreement.  (DE 1-4 at 2).  Land's counsel represented that Land "intend[ed] to promptly file a declaratory judgment action in the Federal District Court of California seeking an order invalidating the entire Agreement," which he stated "would have ramifications to all current and former Zimmer employees based in California."  (DE 1-4 at 3).  Land's counsel concluded the letter by stating that Land was "willing to forgo her right to pursue such an action" "in exchange for a written covenant not to sue from Zimmer."  (DE 1-4 at 3).

On April 12, 2016, Zimmer Biomet filed the instant action against Land, seeking both a preliminary injunction and a permanent injunction, as well as damages.  (DE 1; DE 8).

## II.  MOTION TO TRANSFER UNDER § 1404(a)

Land seeks to transfer this action to the Southern District of California pursuant to 28 U.S.C. § 1404(a).  I will first address the transfer issue before turning to Land's alternative motion for dismissal.

### A.  Applicable Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  "The statute permits a 'flexible and individualized analysis' and affords district courts the opportunity to look beyond a narrow or rigid set of considerations in their determinations."  *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).  The party moving for the transfer bears "the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient."  *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th

Cir. 1986) (citations omitted).

"In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations." *Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 134 S. Ct. 568, 581 (2013). However, in *Atlantic Marine*, the Supreme Court made clear that "[t]he calculus changes . . . when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Id.* (quoting *Stewart*, 487 U.S. at 31). Because the "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system," "and because the overarching consideration under § 1404(a) is whether a transfer would promote the interest of justice, a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id.* (citations, internal quotation marks, and alteration omitted). Under *Atlantic Marine*, the presence of a valid forum-selection clause changes the § 1404(a) analysis in that courts "should not consider arguments about the parties' private interests" because by agreeing to the forum-selection clause, the parties "waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 582. Thus, "a district court may consider arguments about public-interest factors only," but "forum-selection clauses should control except in unusual cases." *Id.*

### B. Discussion

I will now analyze the particular circumstances in this action with respect to the relevant factors to determine whether transfer of venue, as requested by Land, is warranted. I must first

address the validity of the forum-selection clause before turning to whether transfer is appropriate.

### *1. Validity of Forum-Selection Clause*

In order to address whether the forum-selection clause is valid, I must determine what law governs enforceability of the clause. Zimmer Biomet argues that Indiana law should apply, while Land argues that California law should apply.

A federal court sitting in diversity jurisdiction, as is the case here, must apply the forum state's choice-of-law rules. *S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist.*, 50 F.3d 476, 478 (7th Cir. 1995) (citations omitted) ("[A] federal court sitting in diversity must first apply the forum state's choice of law rules, which may or may not select the forum state's substantive law to govern the dispute."). Before proceeding with a choice-of-law analysis, the Court must first determine whether Indiana and California law regarding the enforceability of forum-selection clauses is in genuine conflict. *See Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002) ("Ordinarily a choice of law issue will be resolved only if it appears there is a difference in the laws of the potentially applicable jurisdictions.").

Because the same reasonableness test is applied under both Indiana and California law, there is no conflict of law here. *See Adsit Co., Inc. v. Gustin*, 874 N.E.2d 1018, 1022 (Ind. Ct. App. 2007) (In Indiana, "[f]orum selection clauses—even those occurring in form contracts—are enforceable 'if they are reasonable and just under the circumstances and there is no evidence of fraud or overreaching such that the agreeing party would be deprived of a day in court[, and] the provision must have been freely negotiated.'" (citation omitted)); *Trident Labs, Inc. v. Merrill Lynch Commercial Fin. Corp.*, 132 Cal. Rptr. 3d 551, 556 (Cal. Ct. App. 2011) ("In California,

'forum selection clauses are valid and may be given effect, in the court's discretion and in the absence of a showing that enforcement of such a clause would be unreasonable.'" (citation omitted)); *Smith, Valentino & Smith, Inc. v. Superior Court*, 551 P.2d 1206, 1209 (Cal. 1976) (holding that California's policy favoring access to California courts by California residents is satisfied where a resident "has freely and voluntarily negotiated away his right to a California forum," and thus noting that California is "in accord with the modern trend which favors enforceability of such forum selection clauses"). Because there is no conflict, the law of Indiana, as the forum state, will be applied. *Nelson v. Sandoz Pharm. Corp.*, 288 F.3d 954, 963 (7th Cir. 2002) ("If the difference between state laws is illusory and no conflict exists, our inquiry ends and we apply the law of the forum state.").

The forum-selection clause at issue in this case, under the 2015 Agreement, states that the parties' agreement "shall be construed and enforced in accordance with the laws of the State of Indiana, notwithstanding any state's choice-of-law rules to the contrary." (DE 1-1 ¶ 13). The 2015 Agreement was signed by both Land and Zimmer Biomet's representative, Matthew Wilson. (DE 1-1 at 11). While Land initially alleged that she signed the 2015 Agreement under duress (DE 1-4 at 2), she no longer appears to be advancing this argument. She does contend, however, that at the time she signed the 2015 Agreement, she "understood that non-competition agreements in California were not enforceable." (DE 20-1 ¶ 7).

The forum-selection clause in the 2015 Agreement appears to have been entered into freely by both Land and by Zimmer Biomet through its representative. There is no evidence of any fraud or overreaching by Zimmer Biomet such that Land would be deprived of her day in court. Indeed, Land will have her day in court; the forum-selection clause only designates that it

will be before this Court rather than a court in California. The facts before me show that Land voluntarily entered into the 2015 Agreement, including the forum-selection clause, because she wanted to accept the corporate sales specialty manager position offered to her by Zimmer Biomet. Land's subjective belief that the contract she entered would not be enforceable against her—based on California law, even though the contract specified that Indiana law would apply—is irrelevant; Land entered the 2015 Agreement voluntarily, and the forum-selection clause is reasonable. Thus, the forum-selection clause is valid.

### 2. *Enforceability of the Forum-Selection Clause*

Indiana law will be applied to determine the enforceability of the forum-selection clause, "consistent with the rule that in a diversity action, personal jurisdiction is resolved under the laws of the state where the forum is located." *Zimmer, Inc. v. Sharpe* (*Sharpe II*), No. 3:09-CV-117 RM, 2009 WL 1424199, at *4 (N.D. Ind. May 15, 2009) (citing *IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc.*, 437 F.3d 606, 608 (7th Cir. 2006)). Because of the valid forum-selection clause present in the 2015 Agreement between the parties, I will not examine the private interests, but rather will look only to the public interests. *Atlantic Marine*, 134 S. Ct. at 581. "As the party acting in violation of the forum-selection clause," Land bears "the burden of showing that the public-interest factors overwhelmingly" weigh in her favor. *Id.* at 583. The public interests, or the interest of justice "relates to the efficient administration of the court system," and involves consideration of "factors including docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy." *Research Automation, Inc.*, 626 F.3d at 978 (citations omitted).

Land's first public-interest factor argument is that, because she contends Indiana's choice-of-law analysis requires California law be applied to this litigation, the California courts' greater familiarity with California law and precedents weigh in favor of transferring the case to the Southern District of California. Without addressing Land's choice-of-law argument that California law applies, but even assuming *arguendo* that California law indeed applies to the dispute, there is no reason that this Court cannot apply California law. *See Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 500 (1987) ("[T]he rule is settled that a district court sitting in diversity is competent to apply the law of a foreign State."). Additionally, this is a breach of contract action, and "even if [California] law applied, there is no indication that the court would face complex or unsettled areas of [California] contract law." *Sharpe II*, 2009 WL 1424199, at *8 (citations omitted). Indeed, Land argues that under California law, non-competition covenants are clearly "invalid and unenforceable" (DE 20 at 12), and thus no complex analysis would be necessary. As a result, this factor weighs neutrally between this district and the proposed transfer district.

Next, Land argues that transfer to the Southern District of California is in the public interest because the Southern District of California has less docket congestion than this District. One district's relatively lighter docket may be considered as "a factor relevant to the 'interest of justice' criterion in section 1404(a)." *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003). Here, Land is correct that the Southern District of California has a shorter average time from filing to disposition for civil cases. However, compared to the Northern District of Indiana, the Southern District of California also has a higher number and higher percentage of civil cases that are more than three years old. *See Federal Court Management Statistics–Profiles for U.S.*

11

*District Courts*, Dec. 31, 2015, http://www.uscourts.gov/statistics-reports/federal-court-management-statistics-December-2015. I also give weight to Zimmer Biomet's contention that a transfer of the case at this stage "would delay the case—not speed it up." (DE 26 at 11). Currently pending in this action is Zimmer Biomet's motion for a preliminary injunction (DE 8), on which a hearing has already been held (DE 49 & DE 50). Transfer of this case to the Southern District of California would delay Zimmer Biomet from obtaining a ruling on its request for a preliminary injunction; such delay would likely be to Land's benefit. For these reasons, I find that relative docket congestion or likely speed to trial do not weigh in favor of transfer, but rather weigh in favor of this Court retaining the case.

Land also argues that California has the greater interest in adjudicating this case, as it affects "an agreement executed in California with a California resident, who was doing business in and around California with clients in that region of the country, and who is now employed by another company, working in California," and that "any restraints on business and commerce will most directly affect California," and thus "California has a compelling interest in adjudicating the rights that will affect its citizens and businesses." (DE 20 at 7-8). While Land relies on *Sharpe II*, 2009 WL 1424199, to support these arguments, Zimmer Biomet rightly notes that Land misstated the holding of *Sharpe II*, as this Court actually found in that case that venue should remain in this district, in accordance with the forum-selection clause, because the defendants had not met their burden. In her reply, Land acknowledges her mistake in citing the holding from *Sharpe II*, but argues that the case still supports transfer of venue, since *Sharpe II* involved a "much closer call, where Zimmer had documents and witnesses located in the state of Indiana," while the instant case has a "notably more tenuous" connection to Indiana. (DE 27 at 4). The

location of documents and witnesses, however, are private factors which, under *Atlantic Marine*, courts may no longer consider where there is a valid forum-selection clause. 134 S. Ct. at 581.

As a result, I find Land's argument unpersuasive as to this factor. I further note that while Land was a California resident at the time she entered into the contract, she was working for Zimmer Biomet, a company headquartered in Indiana; that Land was doing business in many other states in addition to California on behalf of Zimmer Biomet; and that Land does not plan to remain a resident of California. (DE 26-1 ¶ 14; DE 26-6; *see also* Land's evidentiary hearing testimony July 11-12, 2016). "Under Indiana law, there is a 'very strong presumption of enforceability of contracts that represent the freely bargained agreement of the parties' and courts recognize that 'it is in the best interest of the public not to unnecessarily restrict peoples' freedom of contract.'" *Cerna v. Prestress Servs. Ind., LLC,* No. 1:10-cv-188, 2011 WL 1884547, at *12 (N.D. Ind. May 18, 2011) (quoting *Eck & Assoc., Inc. v. Alusuisse Flexible Packaging, Inc.*, 700 N.E.2d 1163, 1167 (Ind. Ct. App. 1998)). Here, the parties contracted for an Indiana forum-selection clause, and Land has not met her burden of showing that the public interest factors weigh overwhelmingly in her favor. Thus, I find that it is in the public interest to enforce the forum-selection clause.

## C. Conclusion

For the reasons discussed above, I conclude that the forum-selection clause in the 2015 Agreement is valid and enforceable, and thus venue is proper in Indiana. I therefore will RECOMMEND that Land's motion to transfer this action to the Southern District of California be DENIED.

### III. MOTION TO DISMISS UNDER RULE 12

In the alternative to transfer, Land seeks dismissal of Zimmer Biomet's action against her, pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(d). Because I concluded above that transfer was not appropriate, I will now address Land's alternative arguments for dismissal.

Land advances two arguments for dismissal: first, that Zimmer Biomet's claims against her should be dismissed under Rule 12(b)(6) for failure to state a claim, and second, that Zimmer Biomet is estopped from asserting its claims against her under Rule 12(d). I will discuss each of these arguments in turn.

### A. Applicable Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted); *see also Ray v. City of Chi.*, 629 F.3d 660, 662-63 (7th Cir. 2011) (citation omitted) ("While the federal pleading standard is quite forgiving . . . the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads [herself] out of court." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007)). Thus, a "plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed

by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010).

Under Rule 12(d) of the Federal Rules of Civil Procedure, where "matters outside the pleadings are presented to and not excluded by the court" on a 12(b)(6) motion, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). A narrow exception to Rule 12(d) exists for documents that "are considered part of the pleadings [because] they are referred to in the plaintiff's complaint and are central to [her] claim," and thus "[s]uch documents may be considered by a district court in ruling on the motion to dismiss." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (quoting *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)). "While narrow, this exception is 'aimed at cases interpreting, for example, a contract.'" *Id.* (quoting *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998)).

### B. Rule 12(b)(6) Dismissal

Land seeks dismissal pursuant to Rule 12(b)(6) of all three counts raised by Zimmer Biomet in its complaint against Land, as Land contends that Zimmer Biomet has failed to plead sufficient allegations upon which relief could be granted. Land advances the following arguments in her Rule 12(b)(6) motion: first, that Zimmer Biomet's claims should be dismissed under California law, which Land believes applies in this case; and second, that even if Indiana law were applied, Zimmer Biomet's claims should still be dismissed.

### *1. Whether Indiana or California Law Applies*

I must first determine which state's law applies to Zimmer Biomet's claims in this case.[1]

Land argues that California law applies under an Indiana choice-of-law analysis, because

applying Indiana law would undermine California's policy interests and because California has a

materially greater interest in the dispute than Indiana. Zimmer Biomet argues in its response that

California law does not apply due to the Indiana choice-of-law provision in the 2015 Agreement.

Zimmer Biomet argues that the public policy exception would not apply in this case due to

"overwhelming Indiana authority enforcing choice of law clauses," and because California does

not have a greater material interest in the subject matter of this litigation. (DE 26 at 13).

A federal court sitting in diversity must apply the forum state's choice-of-law rules. *S.A.*

*Healy Co.*, 50 F.3d at 478. I will therefore apply Indiana's choice-of-law rules to determine

whether California or Indiana law governs the enforceability of the restrictive covenants in this

case. Under Indiana law, "a choice of law clause in a contract controls, relieving the court of the

obligation to explore the quality or quantity of contacts between the parties." *Fultz v. Ahmed*,

No. 2:08 cv 289, 2010 WL 2425905, at *3 (N.D. Ind. June 9, 2010) (citations omitted); *see also*

*Nagy v. Riblet Prods. Corp.*, 79 F.3d 572, 576 (7th Cir. 1996) ("Indiana enforces choice-of-law

clauses . . . ."); *GE Capital Info. Tech. Sols., Inc. v. Campbell Ads LLC*, No. 2:11-cv-082-PPS-

APR, 2013 WL 587887, at *4 (N.D. Ind. Feb. 11, 2013) (noting that choice-of-law provisions are

"normally respected by Indiana courts"); *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157,

---

[1] Although I found in Part II(B)(1) above that no conflict of law existed between Indiana and California law regarding the enforceability of the forum-selection clause, whether Indiana or California law applies to the enforceability of the restrictive covenants is a separate matter and thus requires a separate choice-of-law analysis.

1162 (Ind. 2002) ("Indiana choice of law doctrine favors contractual stipulations as to governing law."). Because the 2015 Agreement's choice-of-law clause is "plain and unambiguous," I will honor the parties' choice of law and apply the law of Indiana to these claims. *Fultz*, 2010 WL 2425905, at *3.

## 2. *Whether the Restrictive Covenants Are Reasonable*

Indiana generally disfavors the enforcement of restrictive covenants in employment contracts. *See Cent. Ind. Podiatry, P.C. v. Krueger*, 882 N.E.2d 723, 728 (Ind. 2008). Under Indiana law, non-competition covenants must be reasonable to be enforceable; this reasonableness is a question of law. *Krueger*, 882 N.E.2d at 729 (citations omitted); *see also Gleeson v. Preferred Sourcing, LLC*, 883 N.E.2d 164, 172 (Ind. Ct. App. 2008) ("[Covenants not to compete] are strictly construed against the employer and are enforced only if reasonable." (citing *Krueger*, 882 N.E.2d at 729)). "In arguing the reasonableness of a non-competition agreement, the employer must first show that it has a legitimate interest to be protected by the agreement. The employer also bears the burden of establishing that the agreement is reasonable in scope as to the time, activity, and geographic area restricted." *Krueger*, 882 N.E.2d at 729 (citations omitted). "The employer bears the burden of showing that the covenant is reasonable and necessary under the circumstances. In other words, the employer must demonstrate that the employee has gained a unique competitive advantage or ability to harm the employer before such employer is entitled to the protection of a noncompetition agreement." *Gleeson*, 883 N.E.2d at 172-73 (citations omitted).

Because the reasonableness of the restrictive covenants is a question of law, *Krueger*, 882 N.E.2d at 729, it is an issue appropriately addressed by the Court on a motion to dismiss. Here,

Zimmer Biomet has a legitimate protectible interest to be protected by the 2015 Agreement, and the restrictive covenants in the 2015 Agreement are reasonable in scope under Indiana law as to time, activity, and geographic area restricted.

Without question, Zimmer Biomet has a legitimate protectible interest in the good will established with its customers. *See Zimmer, Inc. v. Masters*, No. 3:14-CV-312 RLM, 2014 WL 1317090, at *4 (N.D. Ind. Mar. 31, 2014) (finding that the defendants' "advantageous personal contacts with Zimmer customers amount to protectable goodwill"); *Krueger*, 882 N.E.2d at 729 ("Indiana courts have held that 'the advantageous familiarity and personal contact which employees derive from dealing with an employer's customers are elements of an employer's "good will" and are a protectible interest which may justify a restraint.'" (citation omitted)); *Gleeson*, 883 N.E.2d at 173 (finding that the employer had "established a protectible interest in its customer relationships"); *MacGill v. Reid*, 850 N.E.2d 926, 929 (Ind. Ct. App. 2006) ("In Indiana, the law recognizes a protectible interest in the good will generated between a customer and a business." (quoting *Norlund v. Faust*, 675 N.E.2d 1142, 1154 (Ind. Ct. App. 1997))).

Next, the restrictive covenants in the 2015 Agreement are reasonable in scope as to the duration of time restricted. The eighteen-month period of time that the restrictive covenants specify is a reasonable time restriction. *See Standard Register Co. v. Cleaver*, 30 F. Supp. 2d 1084, 1098 (N.D. Ind. 1998) (finding that a two-year restriction was reasonable); *Coffman v. Olson & Co., P.C.*, 906 N.E.2d 201, 208 (Ind. Ct. App. 2009) (same); *Gleeson*, 883 N.E.2d at 174 (finding an eighteen-month restriction to be reasonable). "The fact that [the 2015] Agreement contains a provision tolling this period during any violation by [Land] does not change this result . . . ." *Gleeson*, 883 N.E.2d at 174 (citing *Century Pers., Inc. v. Brummett*, 499

N.E.2d 1160, 1162 (Ind. Ct. App. 1986)).

Under the 2015 Agreement, Land agreed to "not, within the Restricted Territory, directly or indirectly, be employed by, work for, consult with, provide services to, or lend assistance to any Competing Organization in a Prohibited Capacity." (DE 1-1 ¶ 7(b)(1)(A)). "Prohibited Capacity" in the 2015 Agreement "is defined as any sales or sales management capacity and/or any other capacity in which Employee's knowledge of Confidential Information and/or Inventions would render Employee's assistance a competitive advantage to a Competing Organization." (DE 1-1 ¶ 7(a)(3)). While Land argues that this definition is "all encompassing" and "intentionally is written in such a fashion as to render Land unable to determine whether any position at Keystone Dental or another dental implant company would or would not violate this provision" (DE 20 at 15), this Court has previously found this same prohibited capacity restriction to be reasonable under Indiana law. *See Zimmer US, Inc. v. Keefer*, No. 3:12-CV-395-JD-CAN, 2012 WL 5268550, at *10 (N.D. Ind. Oct. 23, 2012) (finding reasonable a definition of "prohibited capacity" stated as meaning "using the employee's knowledge of confidential Zimmer information or inventions to lend a competitive advantage to [the competitor]"). Furthermore, while Land argues that this restriction would bar her from working in the industry entirely, the Court notes that the 2015 Agreement includes a paragraph which provides the circumstances under which Land may be employed by a competitor in the industry. (DE 1-1 ¶ 7(b)(1)(B)). Non-compete provisions are reasonable where they restrict an employee from working for a competitor in a similar role or by providing similar services to the employee's former employment, and thus the scope of the activity restricted in the 2015 Agreement is reasonable. *See Gleeson*, 883 N.E.2d at 175-76; *see also Zimmer, Inc. v. Sharpe* (*Sharpe I*), No.

3:09-cv-00117-RLM-CAN, at 8 (N.D. Ind. Mar. 31, 2009), ECF No. 16.

The geographic scope set out in the 2015 Agreement is also reasonable under Indiana law.   The geographic scope in the 2015 Agreement consists of the geographic territory covered by Land during her last two years of employment with Zimmer Biomet.  (DE 1-1 ¶ 7(a)(4)).  The "Restricted Territory" is defined in the 2015 Agreement as:

> (I) any Customer-specific or geographic territory assigned to, or covered by, Employee during Employee's last two (2) years of employment with the Company; (ii) any state or portion of any state assigned to Employee by Company for purposes of any sales or service activities or responsibilities at any time during the two (2) years preceding the termination of Employee's employment with Company; or (iii) any county, municipality or parish of any state or commonwealth assigned to Employee or in which Employee engaged in any sales or service activities on behalf of Company at any time during the two (2) years preceding termination of Employee's employment with Company.

(DE 1-1 ¶ 7(a)(4)).  In Zimmer Biomet's complaint, it states that Land was responsible for a particular region, which included "Alaska, Arizona, California, Colorado, Hawaii, Idaho, Minnesota, Montana, Nevada, North Dakota, Oregon, South Dakota, Utah, Washington, Wisconsin, and Wyoming," which states make up the "Restricted Territory."  (DE 1 ¶ 36).

"Whether a geographic scope is reasonable depends on the interest of the employer that the restriction serves."  *Buffkin v. Glacier Grp.*, 997 N.E.2d 1, 13 (Ind. Ct. App. 2013) (quoting *Krueger*, 882 N.E.2d at 730).  Indiana courts have found certain geographic restrictions to be unreasonable, including restrictions barring work for competitors in the entire continental United States, *id.*; barring work for competitors anywhere in the entire United States, when the employee's "contacts were in a limited number of states," *Dicen v. New Sesco, Inc.*, 839 N.E.2d 684, 689 (Ind. 2005); and barring work for a specific competitor in any state in which that

competitor does business, *Clark's Sales & Serv., Inc. v. Smith*, 4 N.E.3d 772, 783 (Ind. Ct. App. 2014). Geographic restrictions have been found reasonable by Indiana courts where they include the region where the employee established relationships, specifically where the legitimate interest is to protect the employer's existing and prospective customer relationships. *See Krueger*, 882 N.E.2d at 730-31 (finding that a geographic restriction was reasonable as to the counties where the employee had worked for the employer during the two years preceding his termination, but was "unreasonable to the extent it reaches contiguous counties"); *Gleeson*, 883 N.E.2d at 175 (finding that a 150-mile restriction was reasonable because it covered the area that the employee had solicited business for the former employer); *Sharpe I*, No. 3:09-cv-00117-RLM-CAN, at 7-8, ECF No. 16 (finding a provision restricting "the territory . . . in which the Employee was responsible for cultivating or maintaining competitive advantages on Company's behalf" to be reasonable under Indiana law). While this Court previously found unreasonable a geographic restriction in an agreement between Zimmer and two employees, *Masters*, 2014 WL 1317090, at *7-8, that case involved employees who were not assigned to any particular territory, but rather handled certain client accounts. Here, Land was assigned to and responsible for a certain geographic territory, and thus the 2015 Agreement's geographic restriction prohibiting her from working for a competitor in that geographic territory is reasonable.

### 3. Adequacy of Pleading

Having found that Indiana law applies and that the restrictive covenants in the 2015 Agreement are reasonable as a matter of law, the Court will now turn to whether Zimmer Biomet has adequately pled the claims in its complaint to survive Land's motion to dismiss under Rule 12(b)(6). Zimmer Biomet's complaint advances three claims: (1) breach of contract; (2) tortious

interference with business relationships; and (3) unfair competition.

### a. Breach of Contract Claim

Count I in Zimmer Biomet's complaint alleges a breach of contract claim against Land, specifically that she violated the 2015 Agreement because "Land's employment with Keystone consists of a role and territory substantially similar to the role and territory which Land operated while at Zimmer Biomet, in violation of the terms of the [2015] Agreement."  (DE 1 ¶ 68). "Under Indiana law, the elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages."  *U.S. Valves, Inc. v. Dray*, 190 F.3d 811, 814 (7th Cir. 1999) (citing *Fowler v. Campbell*, 612 N.E.2d 596, 600 (Ind. Ct. App. 1993)).

Here, Zimmer Biomet has alleged that it and Land entered into the 2015 Agreement (DE 1 ¶¶ 40, 65), and thus it has adequately alleged the first element for a breach of contract action, the existence of the contract.  Zimmer Biomet also alleged that Land breached the 2015 Agreement through her employment with Keystone Dental (DE 1 ¶¶ 60, 68-70), and thus Zimmer Biomet has sufficiently alleged the breach element.  Finally, Zimmer Biomet has alleged that it has suffered damages as a result of Land's breach.  (DE 1 ¶¶ 62, 71-72).  Zimmer Biomet has therefore plausibly alleged a breach of contract claim against Land upon which relief could be granted.  Accordingly, I will recommend that Land's motion to dismiss be denied with respect to the breach of contract claim.

### b. Tortious Interference Claim

In Count II of its complaint, Zimmer Biomet alleges a claim against Land for tortious interference with its business relationships.  (DE 1 ¶¶ 73-77).  "The elements of tortious interference with a business relationship under Indiana law are (1) the existence of a valid

relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from defendant's wrongful interference with the relationship." *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 278 (7th Cir. 2016) (quoting *Rice v. Hulsey*, 829 N.E.2d 87, 91 (Ind. Ct. App. 2005) (internal quotation marks omitted). "Additionally, the plaintiff must prove that the defendant committed an illegal act to achieve her end." *Id.* (citations omitted).

Land initially makes an argument in her memorandum in support of her motion that Zimmer Biomet's claim for tortious interference with a business relationship is preempted by the Indiana Uniform Trade Secrets Act ("IUTSA"), Ind. Code § 24-2-3-1(c). (DE 20 at 18-19). Zimmer Biomet, in its response, states that the IUTSA "does not preempt claims for misappropriation of information or ideas that are protected by contract." (DE 26 at 22 (quoting *HDNet LLC v. North Am. Boxing Council*, 972 N.E.2d 920 (Ind. Ct. App. 2012))). Land does not address preemption by IUTSA in her reply brief, and thus I assume she has abandoned this line of argument in light of the authority cited by Zimmer Biomet in its response.

Land also argues that Zimmer Biomet's claim for tortious interference must be dismissed because Zimmer Biomet has failed to allege "the existence of any specific valid business relationship; any identified act by Land that interfered with any specific relationship; and any actual damages from any act of Land." (DE 20 at 19). Zimmer Biomet, in its response brief, contends that Land is arguing not that it failed to adequately plead the claim or that it is an actionable claim, but rather that Zimmer Biomet failed to allege facts; Zimmer Biomet then states that there is no fact-pleading requirement at the pleading stage. (DE 26 at 20).

Zimmer Biomet is correct that there is no fact pleading requirement in the federal courts.

A complaint must allege "only enough facts to state a claim to relief that is plausible on its face" in order to survive a motion to dismiss; "heightened fact pleading of specifics" is not required. *Twombly*, 550 U.S. at 547; *see also Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003) ("The complaint does not contain all of the facts that will be necessary to prevail, but a filing under Rule 8 is not *supposed* to do that; it should be 'short and plain' and suffices if it notifies the defendant of the principal events, as this document does. Rule 8 does not require—or permit district judges to require—fact pleading."). Instead, "[f]ederal practice uses a notice-pleading system . . . ." *Hoskins*, 320 F.3d at 764.

Thus, Land's argument—that Zimmer Biomet has failed to identify specific business relationships, specific acts by Land to interfere with those relationships, or actual damages suffered by Zimmer Biomet as a result of Land's acts—fails, as Zimmer Biomet is not required to make a "heightened fact pleading of specifics" in its complaint. *Twombly*, 550 U.S. at 547. Zimmer Biomet's allegations in its complaint are sufficient to provide notice to Land, as Zimmer Biomet has pled "enough facts to state a claim to relief that is plausible on its face." *Id.*

Count II of the complaint alleges that Zimmer Biomet "has maintained valid and long-standing business relationships . . . with its customers," that "Land now works for Keystone, a competitor of Zimmer Biomet, and she is and remains aware of these valid relationships," that "Land has used and is using unlawful means to intentionally and unjustifiably interfere with Zimmer Biomet's business relationships by soliciting Zimmer Biomet's customers," and that "[a]s a result of Land's tortious interference with Zimmer Biomet's business relationships with its customers, Zimmer Biomet has suffered and will continue to suffer irreparable harm and monetary damages, by the loss of customers, revenues, valuable confidential information, and

24

goodwill." (DE 1 ¶¶ 74-77). Zimmer Biomet has therefore adequately pled all of the elements required for a claim of tortious interference with business relationships under Indiana law: the existence of a valid business relationship, Land's knowledge of the existence of the relationship, Land's intentional interference with that relationship, the absence of justification, damages resulting from Land's wrongful interference with the relationship, and illegality. *See Pierce*, 818 F.3d at 278. Accordingly, I will recommend that Land's motion to dismiss be denied with respect to Zimmer Biomet's claim for tortious interference with business relationships.

### c. Unfair Competition Claim

Count III of Zimmer Biomet's complaint alleges an unfair competition claim against Land. (DE 1 ¶¶ 78-84). "Indiana law recognizes that 'the goodwill of a business which includes confidential customer information is a protectable interest by contract or against a conspiracy to appropriate it by unlawful acts.'" *Meridian Fin. Advisors, Ltd. v. Pence*, 763 F. Supp. 2d 1046, 1064 (S.D. Ind. 2011) (quoting *Woodward Ins., Inc. v. White*, 437 N.E.2d 59, 67 (Ind. 1982)). "To this end, the tort of unfair competition has been considered [a] subspecies of the class of torts known as tortious interference with business or contractual relations." *Id.* (quoting *Landeed v. PhoneBILLit, Inc.*, 519 F. Supp. 2d 844, 868 (S.D. Ind. 2007)). There are two formulations for the unfair competition tort under Indiana law, the *Woodward Insurance* formulation, and the *Felsher* formulation, *Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 598 (Ind. 2001). *Meridian Fin. Advisors, Ltd.*, 763 F. Supp. 2d at 1064.

"Under *Woodward Insurance*, a claim for unfair competition may be brought when the employee uses 'trade secrets or other confidential information acquired in the course of [her] employment for [her] benefit or that of a competitor in a manner which is detrimental to [her]

former employer.'" *Id.* (quoting *Woodward Ins.*, 437 N.E.2d at 67). Under *Felsher*, "a cause of action for unfair competition arises when there is 'any conduct, the natural and probable tendency and effect of which is to deceive the public so as to pass off goods or business of one person as and for that of another.'" *Id.* (quoting *Felsher*, 755 N.E.2d at 598). The Supreme Court of Indiana in *Felsher* also recognized that "[u]nfair competition does not describe a single course of conduct or a tort with a specific number of elements; it instead describes a general category . . . [which] is open-ended, and nameless forms of unfair competition may be recognized at any time for the protection of commercial values." 755 N.E.2d at 598.

Land's only argument for dismissal of Count II is that Zimmer Biomet's unfair competition claim is preempted by the IUTSA or is wholly dependent on Zimmer Biomet's claims in Counts I and II. (DE 20 at 20). Zimmer Biomet, in its response, cites to a previous decision by this Court holding that "the tort claim of unfair competition is not displaced by IUTSA." (DE 26 at 22 (quoting *Patriot Homes, Inc. v. Forest River Hous., Inc.*, 489 F. Supp. 2d 865, 875 (N.D. Ind. 2007))). Land does not address preemption by IUTSA in her reply brief, and I therefore assume she has abandoned this line of argument in light of the authority cited by Zimmer Biomet.

Zimmer Biomet's complaint alleges in Count III that "Land is using Zimmer Biomet's Confidential Information for the benefit of Keystone," that "Land used, took advantage of, and disclosed Zimmer Biomet's Confidential Information to gain a competitive advantage for Keystone by engaging in competitive activity on its behalf," that "Land willfully engaged in the conduct described above and did so knowingly and intentionally in order to unfairly compete with Zimmer Biomet," and that "[a]s a result of Land's unfair competition, Zimmer Biomet has

been injured and will continue to be damaged by the loss of customers, revenues, valuable proprietary information, and goodwill, *inter alia*." (DE 1 ¶¶ 80, 82-84). This pleading by Zimmer Biomet satisfies the *Woodhouse Insurance* formulation of a claim for unfair competition under Indiana law, because it alleges that Land used confidential information acquired during the course of her employment with Zimmer Biomet for the benefit of a competitor, Keystone Dental, in a manner that is detrimental to Zimmer Biomet. As such, Zimmer Biomet's claim for unfair competition has been adequately pled in its complaint. I will therefore recommend that Land's motion to dismiss be denied with respect to Zimmer Biomet's unfair competition claim.

### 4. Conclusion as to Rule 12(b)(6) Dismissal

For the reasons explained above, I will recommend that the Court deny Land's Rule 12(b)(6) motion to dismiss Zimmer Biomet's claims for breach of contract, tortious interference with business relationships, and unfair competition.

### C. Rule 12(d) Dismissal

Land also seeks dismissal under Rule 12(d). In her motion, she requests that Count I of Zimmer Biomet's complaint be dismissed pursuant to Rule 12(d) because she contends that Zimmer Biomet is estopped on its breach of contract claim due to its employees' failure to object to her new employment. (DE 19 ¶ 4). In her memorandum, Land argues that Zimmer Biomet is estopped from asserting its claims, but she does not refer to Rule 12(d) or specify the counts on which she contends Zimmer Biomet is estopped. (DE 20 at 20-21). Land cites to her own declaration in support of her contention that Zimmer Biomet is estopped on these claims, stating that Zimmer Biomet had been informed of her new employment with Keystone Dental "at least five times" prior to her last day at Zimmer Biomet, and she states that she relied on Zimmer

27

Biomet's "failure to object and [its] affirmative acts of requesting and then accepting her transition assistance between February 23 and March 2 as evidence that [Zimmer Biomet] in fact did *not* object to her employment with Keystone Dental." (DE 20 at 21). Because she claims to have relied upon Zimmer Biomet's failure to object and its affirmative acts when she resigned from Zimmer Biomet and began working for Keystone Dental, Land argues that Zimmer Biomet is estopped from now challenging her employment with Keystone Dental.

In Zimmer Biomet's response, it states that it disputes Land's version of the facts, as "Mr. Gerson, Mr. Larkin, Mr. Deaver, Mr. Burke, and Ms. Thompson did not approve or consent to Land's role with Keystone and, prior to the meetings and conversations [Land had with these individuals], Land had *already resigned and accepted the position with Keystone* without their knowledge—so nothing they said or did could possibly have impacted Land's transition." (DE 26 at 8-9). Zimmer Biomet cites to affidavits by Mr. Gerson, Mr. Larkin, Mr. Deaver, Mr. Burke, and Ms. Thompson in support of this contention. (DE 26 at 9). Zimmer Biomet argues that it is "completely illogical that Land now claims [these individuals'] actions following her resignation somehow impacted her decision, nor does it make sense they would have 'approved' her decision." (DE 26 at 9).

In her reply brief, Land reiterates her assertion that Zimmer Biomet is estopped from asserting its claims against her. She cites to Mr. Larkin's affidavit, an email message from Mr. Larkin to Mr. Gerson and Mr. Burke, Mr. Deaver's affidavit, Mr. Burke's affidavit, and Ms. Thompson's affidavit in support of her contention that while Zimmer Biomet employees discussed among themselves a concern that Land's new position with Keystone Dental may violate her non-competition agreement, they never expressed these concerns to Land during the

remainder of her employment with Zimmer Biomet or afterwards. (DE 27 at 6-7).

Under Indiana law, the elements of the defense of equitable estoppel are: (1) the plaintiff's inexcusable delay in asserting a right; (2) the plaintiff's implied waiver arising from knowing acquiescence in existing conditions; (3) prejudice to the defendant caused by the delay; and (4) reliance by the defendant. *See Ogle v. Ogle*, 769 N.E.2d 644, 652 n.6 (Ind. Ct. App. 2002) (stating that the defense of equitable estoppel contains the elements of laches as well as the additional element of reliance by defendant); *Lake Cty. v. State ex rel. Manich*, 631 N.E.2d 529, 534 (Ind. Ct. App. 1994) (same).

Here, Land argues that Zimmer Biomet delayed in advising Land of its objection to her new job at Keystone Dental, when it knew that Land intended to take a job at Keystone Dental, a competitor. (DE 20 at 20). Land argues that at the time she informed Mr. Gerson of her resignation and intention to take the job at Keystone, "it was incumbent on Plaintiffs to advise her *then* of their objection." (DE 20 at 20). Land contends that "four executives and Human Resources had failed to raise any objection between February 23 and March 2, [and then] Plaintiffs waited yet *another* three weeks, until March 22, and after Land had joined Keystone Dental, to advise land of their objection to her new job." (DE 20 at 20). Land states that "[b]y their silence and course of conduct, Plaintiffs' [sic] led Land reasonably to believe that they did not have any objection to her new employment, resulting in her following through on her resignation after providing the transition assistance requested by Plaintiffs and then joining Keystone Dental." (DE 20 at 20-21). Land thus claims that "Plaintiffs are estopped from enforcing Paragraph 7(b)(1)(A) of the [2015] Agreement or otherwise attempting to contest her right to be employed in her current position at Keystone Dental." (DE 20 at 21).

Zimmer Biomet, in its response, argues that there are questions of fact which must be resolved regarding equitable estoppel. (DE 26 at 23). Specifically, Zimmer Biomet identifies a factual dispute between Land's statement in her memorandum that Mr. Gerson and Mr. Larkin "expressed comfort with the position Land was taking at Keystone . . . ." and the affidavits submitted by Mr. Gerson and Mr. Larkin. Zimmer Biomet also disputes the statement attributed by Land to Mr. Deaver that "the position at Keystone Dental sounded like a good deal," as Zimmer Biomet contends that "Mr. Deaver never stated or implied his approval of her new position." (DE 26 at 24). Additionally, Zimmer Biomet disputes statements that Land attributes to Mr. Deaver and Mr. Burke, as she alleges they "told her they thought her new job was a good move for her." (DE 26 at 24). Further, Zimmer Biomet disputes the statements Land attributes to Ms. Thompson during the exit interview.

As a result, it is apparent that there is a genuine dispute of material fact regarding what Zimmer Biomet's employees actually said to Land. What was actually said to Land is a factual dispute that must be resolved before the question of equitable estoppel can be addressed. If the Court were to convert this motion to dismiss by Land into a motion for summary judgment under Rule 12(d), this genuine dispute of material fact would prevent entry of summary judgment. Accordingly, I will recommend that Land's motion to dismiss pursuant to Rule 12(d) be denied.

### D. Conclusion Regarding Land's Motion for Dismissal Under Rules 12(b)(6) and 12(d)

For the reasons explained above, I will RECOMMEND that Land's alternative motion for dismissal pursuant to Rule 12(b)(6) and Rule 12(d) be DENIED.

## IV. CONCLUSION

For these reasons, I RECOMMEND that Land's Combined Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) or, in the Alternative, to Dismiss Pursuant to F.R.C.P. 12(b)(6)) and 12(d) (DE 19) be DENIED. The Clerk is directed to send a copy of this Report and Recommendation to counsel for the parties. NOTICE IS HEREBY GIVEN that within 14 days after being served with a copy of this recommended disposition, a party may serve and file specific, written objections to the proposed findings or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.

Entered this 10th day of January 2017.

/s/ Susan Collins
Susan Collins,
United States Magistrate Judge