# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| BIOMET 3i, LLC and ZIMMER US, INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CAUSE NO.: 1:16-CV-125-TLS |
| ) | |
| HEATHER LAND, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

This matter is before the Court on Defendant Heather Land's Objections to the Report and Recommendation of the United States Magistrate Judge [ECF No. 85]. The Plaintiffs, Biomet 3i, LLC ("Biomet 3i") and Zimmer US, Inc. ("Zimmer"), filed a Motion for a Preliminary Injunction [ECF No. 8] and accompanying Brief in Support [ECF No. 9] on April 12, 2016. The Plaintiffs are requesting injunctive relief to enforce a restrictive covenant (the "Covenant") of their Non-Solicitation Agreement for Sales Managers and Representatives (the "Agreement") against the Defendant, who currently is employed by their competitor, Keystone Dental ("Keystone"). The Court referred this matter to Magistrate Judge Susan Collins on May 10, 2016. The Defendant filed her Response [ECF No. 47] on July 7, 2016. The Magistrate Judge held an Evidentiary Hearing on July 11, and July 12, 2016. The Plaintiffs filed their Post-Hearing Brief in Support [ECF No. 58] on September 8, 2016, to which the Defendant filed her Response [ECF No. 62] on September 9, 2016. The Plaintiffs filed their Post-Hearing Reply [ECF No. 65] and the Defendant filed a Post-Hearing Brief Response [ECF No. 66] on September 15, 2016. The Magistrate Judge issued the Report and Recommendation ("R&R") on January 10, 2017. The Defendant filed her Objections to the Report and Recommendation [ECF No. 88] on January

24, 2017, to which the Plaintiffs filed their Brief in Opposition [ECF No. 97] on February 9, 2017. This matter is now ripe for ruling.

## STANDARD OF REVIEW

In accordance with the Federal Magistrate's Act, as amended, 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72(b), and Local Rule 72-1, a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, including dispositive motions, and the magistrate judge must enter a recommended disposition, including any proposed findings of fact. The parties then have fourteen days after being served with a copy of the recommended disposition to file written objections to the proposed findings and recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1); *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs.*, 9 F.3d 1263, 1266 (7th Cir. 1993). The district judge must look at all the evidence contained in the record and may accept, reject, or modify the recommended disposition. Fed. R. Civ. P. 72(b)(3); *Harlyn*, 9 F.3d at 1266.

## DISCUSSION[1]

The Defendant objects to the R&R on several grounds. First, the Defendant argues that the Magistrate Judge in the R&R applied an incorrect standard. The Defendant contends that under the correct standard, the Plaintiffs are not likely to succeed on the merits because

---

[1] The Defendant "for purposes of these objections only," (Def.'s Br. 2, ECF No. 88), relies on the findings of fact set forth in the R&R (R&R 1–10; ECF No. 85), "even though the Defendant may disagree with them" (Def's Br. 2). The Court notes the Defendant reserves her right to object to findings of fact outside of the scope of the preliminary injunction and adopts the Magistrate Judge's finding of fact in the R&R as the Court's own.

2

protection of the Plaintiffs' legitimate interest does not require injunctive relief. Furthering that point, the Defendant secondly argues that the Plaintiffs already have an adequate remedy at law that does not require injunctive relief. Third, the Defendant argues that the Plaintiffs do not suffer from irreparable harm. Fourth, the Defendant argues that the balance of harms weighs against injunctive relief. Fifth the Defendant argues that the public interest is not served by issuing an injunction. Sixth, the Defendant argues that the Plaintiffs should be estopped from enforcing the Covenant because such injunction would be inequitable. Seventh and last, the Defendant argues that any preliminary injunction should be more limited than that recommended by the Plaintiffs. The Court addresses each objection in turn.

**A.     Proper Standard**

The Defendant argues that the Magistrate Judge applied the incorrect standard for a preliminary injunction, and under the correct standard, the Plaintiffs are not likely to succeed on the merits because protection of the Plaintiffs' "legitimate interest" does not require injunctive relief. The Defendant argues that the Magistrate Judge erred in applying "a standard akin" to a Rule 12(b)(6) motion by assuming that the Defendant only sought a facial challenge to the enforceability of the Covenant. The Defendant contends that the R&R does not evaluate the Covenant's application to the evidentiary facts. The Plaintiffs point out that the Defendant does not support this contention with any legal authority and does not proffer an alternative standard than the one the Magistrate Judge used. Furthermore, the Plaintiffs argue that the Magistrate Judge applied the proper standard in the case.

The Magistrate Judge set forth the proper standard in the R&R:

> "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (internal citations omitted). "In assessing whether a

3

> preliminary injunction is warranted, we must consider whether the party seeking the injunction has demonstrated that '1) it has a reasonable likelihood of success on the merits; 2) no adequate remedy at law exists; 3) it will suffer irreparable harm if it is denied; 4) the irreparable harm the party will suffer without injunctive relief is greater than the harm the opposing party will suffer if the preliminary injunction is granted; and 5) the preliminary injunction will not harm the public interest.'" *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Linnemeir v. Bd. of Trs. of Purdue Univ.*, 260 F.3d 757, 761 (7th Cir. 2001)). The district court must exercise its discretion to arrive at a decision "based on a subjective evaluation of the import of the various factors and a personal, intuitive sense about the nature of the case." *Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1436 (7th Cir. 1986). The decision-making process also involves a "sliding scale" analysis, at least to the extent that "the more likely it is the plaintiff will succeed on the merits, the less the balance of irreparable harms need weigh toward its side; the less likely it is the plaintiff will succeed, the more the balance need weigh towards its side." *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992) (citations omitted). "The sliding scale approach is not mathematical in nature, rather 'it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief.'" *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895-96 (7th Cir. 2001) (quoting *Abbott Labs.*, 971 F.2d at 12). But there is still a threshold to be met. A total failure to meet any one of the test's requirements cannot be compensated by a strong showing with respect to another. See, e.g., *East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 703 (7th Cir. 2005) (holding that, if a moving party cannot show that there is irreparable harm and no adequate remedy at law, "a court's inquiry is over and the injunction must be denied"); *Jolivette v. Husted*, 694 F.3d 760, 765 (6th Cir. 2012) ("Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal.").

(R&R 10–11; ECF No. 88.) Accordingly, upon review of the record, the Court agrees with the Magistrate Judge and adopts as its own the findings of fact and analysis of the Magistrate Judge in applying the standard of review for the preliminary injunction.

**B.      Existence of a Protectible Interest**

The Defendant objects to the Magistrate Judge's finding in the R&R that the Plaintiffs have a legitimate protectible interest. The Defendant argues that the Plaintiffs have not proven that a portion of the files the Defendant uploaded on to the USB drive contains confidential information as alleged, or that the Defendant does not have influence over customers that she once had. The Defendant argues that absent the Plaintiffs establishing either, the Plaintiffs have not established a legitimate protectible interest, but rather only a "theoretical" one.[2] The Plaintiffs argue that they have established a protectible interest, and have established both that the Defendant took confidential information and that the Defendant threatens their customer relationships.

The Magistrate Judge found that the Plaintiffs have established a legitimate protectible interest to enforce an injunction against the Defendant. The Plaintiffs must show "some reason why it would be unfair to allow the employee to compete with the former employer." *Unger v. FFW Corp.*, 771 N.E.2d 1240, 1244 (Ind. App. 2002) (citing *Titus v. Rheitone, Inc.*, 758 N.E.2d 85, 92 (Ind. Ct. App. 2001)). The Agreement is designed to prevent an employee from using his or her knowledge of the Plaintiffs' confidential information to solicit business from the Plaintiffs' customers or active prospects in competition with the Plaintiffs. To allow an employee to leave employment with the Plaintiffs and then do those things immediately as an employee of a competitor would be unfair to the Plaintiffs. Upon review of the record, the Plaintiffs have established a legitimate protectible interest on these grounds.

As the Magistrate Judge discussed, the Defendant's argument for whether the Plaintiffs took proper steps to establish that the alleged confidential documents she took were indeed

---

[2] It appears that the crux of the Defendant's objections concerning the proper standard applied by the Magistrate Judge for a preliminary injunction involved the "theoretical" protectible interest argument.

"confidential" for the purposes of establishing a legitimate protectible interest is irrelevant because the Plaintiffs have already established a legitimate protectible interest under Indiana law—to prevent the Defendant from stealing clients or lending an unfair competitive advantage. *Zimmer US, Inc. v. Keefer*, No. 3:12-CV-395-JD-CAN, 2012 WL 5268550, at *8 (N.D. Ind. Oct. 23, 2012) (citing *Hahn v. Drees, Perugini & Co.*, 581 N.E.2d 457, 460 (Ind. Ct. App. 1991)). Accordingly, upon review of the record, the Court agrees with the Magistrate Judge and adopts as its own the findings of fact and analysis of the Magistrate Judge in finding that the Plaintiffs have established a legitimate protectible interest for injunctive relief under Indiana law.

**C.     Temporal Scope**

The Defendant next objects to the temporal scope of the injunction. The Defendant argues that in holding that an 18-month length of the restriction is reasonably likely to succeed on the merits, the Magistrate Judge did not test its reasonableness against the facts adduced at the hearing.

Indiana courts have upheld time restrictions equal to and longer than the 18-month restriction contained in the Agreement. *See Standard Register Co. v. Cleaver*, 30 F. Supp. 2d 1084, 1098 (N.D. Ind. 1998); *Coffman v. Olson & Co.*, 906 N.E.2d 201, 208 (Ind. Ct. App. 2009); *Gleason v. Preferred Sourcing, LLC*, 883 N.E.2d 164, 174 (Ind. Ct. App. 2008). "The fact that the [a]greement contains a provision tolling this period during any violation by [the Defendant] does not change this result . . . ." *Gleeson*, 883 N.E.2d at 174 (citing *Century Pers., Inc. v. Brummett*, 499 N.E.2d 1160, 1162 (Ind. Ct. App. 1986)). The Defendant argues that the R&R did not provide an in-depth as applied factual analysis as to why the temporal scope of the injunction is reasonable. However, the Defendant does not proffer an argument for why this duration would be unreasonable given the facts set forth in the R&R. Instead, the Defendant in a

6

footnote provides several citations to the transcript, her Post-Hearing Brief, and her Brief in Response arguing that the Defendant had "no influence over Plaintiffs' customers," and "does not possess the customer relationships asserted by the Plaintiff." (Def's Resp. to Pls.' Post Hearing Br. 9, ECF No. 66.) That the Defendant was unsuccessful in recruiting clients away from the Plaintiffs is unavailing. The findings of fact in the R&R demonstrate that the Plaintiffs have a legitimate protectible interest in enforcing the restrictive period in the Agreement the Defendant entered into, a time period that is well settled under Indiana law to be reasonable. The Court finds on review of the R&R that the temporal scope of the restriction is reasonable given the record set forth in the R&R and the contractual term.

**D.     Breadth of Activity Restriction**

The Defendant next objects to the R&R on the grounds that the Magistrate Judge failed to evaluate the reasonableness of the activity restriction in light of the facts presented. The Defendant argues that the Magistrate Judge improperly determined that the breadth of the activities restricted was reasonable. The Defendant argues that the R&R failed to take a next step, to determine whether the restriction is unreasonable in relation to the legitimate interest it is designed to protect. In turn the Plaintiffs argue that the restricted activities are reasonable and necessary to protect their legitimate business interests. The Magistrate Judge found in the R&R that the Agreement does not prohibit the Defendant from working for a competitor in all capacities, but only from working directly in a capacity analogous to the one in which she worked for the Plaintiffs. *See Gleeson*, 883 N.E.2d at 175–76. The Magistrate Judge noted that the Agreement does not prevent the Defendant from working for a competitor in a different capacity from the one in which she worked for the Plaintiffs during her last two years of employment, and also noted that the Plaintiffs are likely to succeed on the issue.

It is well settled under Indiana law that restrictive covenants are considered reasonable if they prohibit a former employee from engaging or promoting unfair competition or working a role similar to the role they held with their former employer. *Id.* Here, the Defendant was employed with the Plaintiffs as a regional sales manager and corporate sales manager promoting and selling dental products in a region that is substantially similar to that in her current position with Keystone. Furthermore, as the Magistrate Judge stated, the Agreement does not prevent the Defendant from working in a different capacity with a competitor, and the Plaintiffs are likely to succeed on the issue. Accordingly, upon review of the record, the Court agrees with the Magistrate Judge and adopts as its own the findings of fact and analysis of the Magistrate Judge to conclude that the breadth of activity restricted is reasonable and necessary to protect the Plaintiffs' legitimate business interests.

**E.     Adequate Remedy**

The Defendant next argues that the Magistrate Judge erred in finding that the Plaintiffs had a legitimate interest in enforcing the Covenant to protect against use of their confidential information because the Plaintiffs already have an adequate monetary remedy at law. The Defendant contends that the Plaintiffs have not provided any evidence that they have lost customers due to the Defendant's actions. The Plaintiffs in turn argue that they have presented evidence to the Magistrate Judge showing that any amount of damages assessed at this point would be somewhat "speculative." (Tr. 101.)[3] The Plaintiffs also argue that the purpose of the injunction is not only to remedy existing harm, but to prevent future harm as well. *Washel v.*

---

[3] As referenced in the R&R, the unredacted transcript from the July 11–12, 2016, Evidentiary Hearing has been filed in the record in two parts, with one part for each day of the hearing [ECF Nos. 72–73]. A redacted version of the transcript has also been filed in the record in two parts [ECF Nos 81–82].

*Bryant*, 770 N.E.2d 902, 906 (Ind. Ct. App. 2002) ("[I]njunctive remedy [is] meant to prevent future violations of the agreement.")

In the R&R, the Magistrate Judge found that there is no adequate remedy of law in this case "because money damages will be both very difficult to calculate, and will almost certainly be inadequate to remedy the harm caused to Zimmer Biomet by Land's employment with Keystone Dental." (R&R 24.) The Magistrate Judge noted that under Indiana law, it is "virtually impossible to quantify" the damage caused by an employee's breach of a non-competition agreement. *Cent. Ind. Podiatry, P.C. v. Krueger*, 882 N.E.2d 723, 733 (Ind. 2008). The Magistrate Judge concluded that "[b]ecause it is unlikely that Zimmer Biomet will be able to determine the full extent of harm resulting from [the Defendant's] employment with its competitor, and because any attempt to calculate a monetary amount of damages will be largely speculative," Zimmer Biomet does not have an adequate remedy at law. (R&R 24–25.) Upon review of the record, the Court agrees with the Magistrate Judge and adopts as its own the findings of fact and analysis of the Magistrate Judge in finding that the Plaintiffs do not have an adequate remedy at law.

**F.      Irreparable Harm**

The Defendant next objects to the Magistrate Judge's finding that her continued employment with a competitor in violation of the Agreement will cause irreparable harm. The Defendant argues that any loss of customers that may occur in the future can be remedied by an award of damages. The Defendant also argues that the Defendant "does not possess any legally 'confidential' information," and therefore her "knowledge of Zimmer Biomet's practices, customers, and strategy" fall outside the scope of the Agreement. (Def.'s Br. 7.) In response, the

9

Plaintiffs argue that they do not need to demonstrate a specific harm, but can establish irreparable harm

"The irreparable harm requirement does not mandate that the party demonstrate specific losses in its business." *Keefer*, No. 3:12-cv-395-JD-CAN, 2012 WL 5268550, at *12 (first quoting *AGS Capital Corp., v. Prod. Action Int'l, LLC*, 884 N.E.2d 294, 312 (Ind. Ct. App. 2008); then citing *Norlund v. Faust*, 675 N.E.2d 1142, 1149 (Ind. Ct. App. 1997)) (quotations omitted). Irreparable harm is "necessarily intangible—a loss of goodwill, a need to start over again on building personal relationships . . . , etc.—but that does not make it any less real." *Id.* "The fact that it cannot be quantified in a dollar amount is an argument in favor of equitable relief, not against it." *Id.*

The Magistrate Judge in the R&R found that the Defendant's continued employment with a competitor in violation of the Agreement will cause irreparable harm to Zimmer Biomet. Upon review of the record, the Court agrees with the Magistrate Judge and adopts as its own the findings of fact and analysis of the Magistrate Judge in finding that the Plaintiffs would have irreparable harm caused to them by the Defendant if she continues in her current employment.

**G.     Balancing of Harms**

The Defendant objects to the Magistrate's finding in the R&R that the balance of harms supports entry of injunctive relief. The Defendant argues that the Magistrate's determination was based on two conclusions. First, that the Defendant's "knowledge of Zimmer Biomet's products and operations, combined with her experience and reputation within the community, could create a significant competitive advantage for Keystone" (R&R. 26.) And second, that in response to the question of whether she would commit that she would not personally solicit any of the Plaintiffs' customers, the Defendant answered, "[i]f that's what's deemed by the Court, a

10

hundred percent." (*Id.* at 28.) The Defendant argues that her experience in the industry and reputation in the community is hers and not the Plaintiffs, and therefore the Plaintiffs cannot protect human capital that is not theirs. The Defendant also argues that the Defendant's testimony relied upon by the Magistrate Judge in the R&R was taken out of context.

In turn, the Plaintiffs argue that the Magistrate Judge relied upon the entire record, and that Indiana law supports the Magistrate Judge using an employee's experience and reputation in the community in the balance of harms analysis. *See McGlothen v. Heritage Envtl. Servs., L.L.C.*, 705 N.E.2d 1069, 1075 (Ind. Ct. App. 1999) (employee's "intelligen[ce]" and "many years of experience" factored into the balance of harms). Additionally, the Plaintiffs argue that the Magistrate Judge relied on the totality of the record in forming her analysis, as evidenced by the preceding paragraphs before the quote the Defendant maintains was taken out of context.

The Magistrate Judge found that the potential harm if the preliminary injunction is not issued is great. The Defendant is already working for a direct competitor. The Defendant contacted and offered Keystone products to at least one customer she had interacted with while employed by the Plaintiffs. The Defendant directed Keystone sales representatives who report to her to target the Plaintiff's customers. The Defendant uploaded to a flash drive 5,948 files—much of which included confidential information—within a few days of Keystone offering her a job. The Defendant later accessed some of these documents during her employment at Keystone. The 15-state region that the Defendant covered for the Plaintiffs, which makes up a large portion of the Plaintiffs' business in the United States, directly overlaps with the region she now is covering for Keystone. The Defendant's knowledge of the Plaintiffs' products and operations are harmful to the Plaintiffs. Her years of experience and reputation in the community can also be

11

factored into the balance of harms analysis under Indiana law. *See McGlothen*, 705 N.E.2d at 1075.

But irrespective of the Defendant's argument that her knowledge cannot be protectible to the Plaintiffs, the Court finds that the balance of harms still weigh in favor of injunctive relief. When balancing the harms, "the more likely it is the plaintiff will succeed on the merits, the less the balance of irreparable harms need weigh towards its side; the less likely it is the plaintiff will succeed, the more the balance need weigh towards its side." *Abbot Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992). Furthermore, the Defendant's willingness to voluntarily comply with her own extended courtesy not to solicit any of Plaintiffs' accounts is undercut by the totality of the Defendant's actions in the record. Upon review of the record, the Court agrees with the Magistrate Judge and adopts as its own the findings of fact and analysis of the Magistrate Judge in finding the balance of harms weighs in favor injunctive relief.

## H. Public Interest

The Magistrate Judge in the R&R found that the preliminary injunction recommended in this case would be consistent with the public interest. The Defendant argues that the R&R's discussion of what is in the public interest is premised on erroneous conclusions, and that it would ultimately be in the public interest to deny a preliminary injunction. The Plaintiffs argue that the public interest is not disserved with the entry of an injunction order.[4]

---

[4] The Plaintiffs also note that the Defendant generally objects to the Magistrate Judge's finding on the injunction being in the public interest, and does not provide any reasoning beyond that. *Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (finding the objection was "not specific enough to preserve [the] claim for review" because the object was nothing more than a "bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and [it was] unsupported by legal authority").

12

"Noncompetition agreements or covenants not to compete are in restraint of trade and are not favored by" Indiana law. *Gleeson*, 883 N.E.2d at 172. But that concern is alleviated where "the employer has asserted a legitimate interest that may be protected," and where "the scope of the agreement is reasonable in terms of time, geography, and types of activity prohibited." *Id.* The Magistrate Judge found the preliminary injunction in this case would be consistent with the public interest, given the Defendant's breach of the Agreement. Upon review of the record, the Court agrees with the Magistrate Judge and adopts as its own the findings of fact and analysis of the Magistrate Judge in finding that the preliminary injunction in this case is consistent with public policy.

I.  **Estoppel**

The Defendant next argues that the Magistrate Judge incorrectly found in the R&R that the Plaintiffs are not estopped from enforcing the Agreement. The Defendant argues that estoppel is warranted because it is inequitable that the Plaintiffs were uniquely in control of their decision whether to enforce the agreement and made representations to the Defendant that they would not enforce the Covenant. The Defendant argues that if she had knowledge of that enforcement decision, she could have "prevented the very breach that forms the basis of" the Plaintiffs' lawsuit against her, and that the record uncontrovertibly shows that she would have reconsidered accepting the job at Keystone. (Def. Br. 9.) The Defendant contends that the Plaintiffs' selective enforcement is magnified by the fact that Jim Gerson, her territory Team Lead, only expressed concern about whether the Defendant would be working institutional accounts at Keystone, and expressed no further concern once the Defendant told him she would not be handling those. The Defendant contends that the "record facts demonstrate that [the Defendant] relied on both Gerson's statements and [the] Plaintiffs' silence, in the context of her

13

prior understanding about the unenforceability of non-compete agreements in California, and reasonably interpreted that [the] Plaintiffs had no objection to her working at Keystone in a position that did not involve institutional customers." (Def.'s Br. 10 n.11.)

Furthermore, the Defendant contends that the law on this particular set of facts is uncertain, and cites to *Ikon Office Solutions., Inc. v. American Office Products, Inc.*, 178 F. Supp. 2d 1154, 1165 (D. Or. 2001), for the proposition that the Plaintiffs' conduct after the Defendant announced her intent to resign induced her to believe that the Plaintiffs did not object to the job she was taking at Keystone, so long as she did not deal with institutional accounts. The Plaintiffs argue that this is an unusual case, for which neither party has found case authority directly on point, because after the Defendant accepted Keystone's employment offer and announced her intention to resign, the Plaintiffs asked the Defendant to remain employed, to which she agreed. The Defendant argues that during this eight day period that she remained employed by the Plaintiffs, they never made representations that they would enforce the Covenant.

In response, the Plaintiffs argue that they never waived their right to enforce the Covenant, and the legal authority on the matter is clear. Furthermore, the Plaintiffs contend that even if their silence between the Defendant informing them of her offer from Keystone, and their informing her of their legal position, the record unequivocally shows that the Defendant had decided to work for Keystone before ever informing the Plaintiffs.

Under Indiana law, "[t]he elements of equitable estoppel are: (1) a representation or concealment of a material fact, (2) made by a person with knowledge of the fact and with the intention that the other party act upon it, (3) to a party ignorant of the fact, (4) which induces the other party to rely or act upon it to his detriment." *Clark v. Crowe*, 778 N.E.2d 885, 840 (Ind. Ct.

App. 2002) (citing *Wabash Grain, Inc. v. Smith*, 700 N.E.2d 234, 237 (Ind. Ct. App. 1998)). The Magistrate Judge found in the R&R that the Defendant's acceptance of the position at Keystone and resignation from her position at Zimmer Biomet occurred prior to almost all of the Plaintiffs' "actions and silence" that she claims to have relied on. The Magistrate Judge noted that all of the defendant's conversations with Biomet 3i human resources occurred prior to its acquisition by Zimmer and prior to the Defendant signing the Agreement—the controlling agreement in this case. The Court notes that the Defendant at this objection stage still does not explain why she relied on Biomet 3i's pre-acquisition actions knowing the Agreement was signed under post-acquisition, Zimmer Biomet policy. Furthermore, the Defendant's reliance on non-enforcement against previous Biomet sales representatives in California fails to account for the fact that her regional sales position with Zimmer Biomet encompassed many more states than just California.

The Magistrate Judge also noted that contrary to the Defendant's characterization of her conversations with Gerson, the exchanges should have been a sign to the Defendant that Zimmer Biomet was concerned about her role with Keystone. Lastly, the Magistrate Judge also noted that the Defendant had specifically forwarded the Agreement to Keystone, and its legal team reviewed the contract. Keystone's lawyer emailed the Defendant on February 15, 2016—a week before she resigned from Zimmer Biomet—and advised her that Zimmer Biomet could not enforce the Covenant. The Magistrate Judge found that this fact discredits the Defendant's argument that she detrimentally relied on Zimmer Biomet's alleged acts or omissions.[5]

---

[5] The Plaintiffs point to six facts to show that the Defendant unequivocally decided to work for Keystone before informing the Plaintiffs: (1) the Defendant accepted her position at Keystone within four hours, having already been told by Keystone days earlier the offer was coming, (2) the Defendant informed the Plaintiffs of her resignation the day after she had accepted her offer, (3) the Defendant's resignation letter to the Plaintiffs did not inquire whether the Plaintiffs approved of her new role with Keystone, (4) the Defendant admits she never asked whether the Plaintiffs approved of her position, (5) when one of the Defendant's colleagues asked her whether "there is anything [he] can do to keep [her]" at Zimmer Biomet, the Defendant responded, "No, I've made up my mind. I'm going to Keystone"

The Defendant objects to the Magistrate's reasoning because the Defendant believes that the Magistrate Judge conflated a legal "duty" imposed by the Agreement not to work on institutional accounts with what the Defendant thought was a courtesy extended by her to the Plaintiffs. The Defendant also objects to the Magistrate Judge's finding that the Defendant relied on the legal position of Keystone rather than perceived representations of non-enforcement of the Agreement as "conjecture." (Def's Br. 11.) Both arguments are unavailing. It is not an "error of law" that the Magistrate Judge would rely on the Defendant's actions and conversations developed in the record to determine whether the Defendant was induced by the Plaintiffs to rely on their representations.

Furthermore, the Defendant's continued reliance on *Ikon Office Solutions*, is equally unavailing. As the Magistrate Judge discussed in the R&R, that case, filed in Oregon District Court, is distinguishable because the employer there expressly informed one of the defendant employees that he did not sign a non-competition agreement when in fact that employee had signed one, but then sought to enforce that agreement after the employee left. *Ikon Office Solutions., Inc.*, 178 F. Supp. 2d at 1161. Upon review of the record, the Court agrees with the Magistrate Judge and adopts as its own the findings of fact and analysis of the Magistrate Judge in finding that the Plaintiffs were not equitable estopped from enforcing the Agreement against the Defendant.

**J.    Overbreadth**

Lastly, the Defendant argues in the alternative that if the Court grants the injunction, the relief awarded should be more limited in scope than recommended by the Magistrate Judge. The

---

(Tr. 241), and (6) when given the opportunity at the Hearing to discuss how overt conduct by the Plaintiffs would have changed her decision, the Defendant only said she would have "taken pause." (*Id.* at 150.)

Defendant contends that the injunction should not "exceed protection of specified information found to be 'confidential' . . . and protection of Plaintiffs' institutional customer relationships—the only customer relationships arguably at risk." (Def.'s Br. 12, ECF No. 88.) The Defendant argues that this is because there is no basis in the record facts or the law for a complete bar to the Defendant's employment in her current position. The Defendant argues that she should be permitted to remain in her current position, subject to a limited injunction as to the use and disclosure of confidential information and solicitation of the Plaintiffs' institutional accounts. In turn, the Plaintiffs argue that the restricted activities are reasonable and necessary to protect their legitimate business interests.

As discussed above, the Magistrate Judge found that the Agreement does not prevent the Defendant from working for a competitor in a different capacity from the one in which she worked for the Plaintiffs in her last two years of employment. Upon review of the record, the Court agrees with the Magistrate Judge that the breath of the restrictions is reasonable as previously found above.

## CONCLUSION

The Court has reviewed the entire record of this case, including the various motions with the accompanying briefing, the Magistrate's Report and Recommendation, and the Defendant's objections to the Report and Recommendation. Having made a de novo review of the arguments presented by the parties, the Court agrees with and adopts as its own the findings and analysis of the Magistrate Judge. For the foregoing reasons, the Court OVERRULES the Defendant's Objections to the Report and Recommendation of United States Magistrate Judge [ECF No. 88] and ADOPTS the Magistrate Judge's Report and Recommendation [ECF No. 85] on the Plaintiffs' Motion for Preliminary Injunction. Accordingly, the Court now GRANTS the

Plaintiffs' Motion for Preliminary Injunction [ECF No. 8]. The Defendant is enjoined pursuant to the Non-Solicitation Agreement for Sales Mangers and Representatives from the following:

    A.    Working, for eighteen (18) months, for Keystone in the Restricted Territory she covered as Zimmer Biomet Corporate Sales Manager, which consists of: Alaska, Arizona, California, Colorado, Hawaii, Idaho, Minnesota, Montana, Nevada, North Dakota, Oregon, South Dakota, Utah, Washington, Wisconsin, and Wyoming;

    B.    Directly or indirectly soliciting, for eighteen (18) months, any person, corporation or other entity serviced, sold to, approached or solicited, directly or indirectly, by Land during the last eighteen (18) months of her role as a Zimmer Biomet manager;

    C.    Soliciting, recruiting, enticing, or taking away or assisting others in recruiting, soliciting, or hiring (a) current Zimmer Biomet employees, sales representatives, or consultants or (b) individuals who were employees, sales representatives, or consultants for Zimmer Biomet within the preceding two (2) years, for a period of eighteen (18) months; and

    D.    Disclosing or using any Confidential Information, as defined in the Agreement.

    E.    Possessing any of Zimmer Biomet's Confidential Information

The Defendant is required to file with the Court and serve on the Plaintiffs periodic written reports every thirty (30) days after service of the Preliminary Injunction, under oath, setting forth the manner and form in which the Defendant has complied with the Preliminary Injunction.

SO ORDERED on March 30, 2017.

                                                s/ Theresa L. Springmann
                                                CHIEF JUDGE THERESA L. SPRINGMANN
                                                UNITED STATES DISTRICT COURT